IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRSTMERIT BANK, N.A., successor by assignment to the Federal Deposit Insurance Corporation as Receiver for Midwest Bank and Trust Company, | ) ) ) ) ) | |
| Plaintiff, | ) ) | 13 C 2734 |
| v. | ) ) | Judge John Z. Lee |
| DONLIN BUILDERS, INC.; MMB DEVELOPMENT LLC; SPRING FORT HALL CONDOMINIUM; WALTER M. BEKTA; and MAUREEN A. BURNS BEKTA, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff FirstMerit Bank, N.A. ("FirstMerit"), as successor in interest to the original mortgagee Midwest Bank and Trust Company, filed a complaint in foreclosure against Defendants to collect on the delinquent loans, foreclose on the property securing the loans, and enforce Defendants Walter M. Bekta and Maureen A. Burns Bekta's personal guarantees. Defendants filed an answer, affirmative defenses, and counterclaims alleging breach of contract, breach of implied covenant of good faith and fair dealing, and violation of the Consumer Fraud Act (the "Counterclaims"). Plaintiff has moved to dismiss the Counterclaims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons provided herein, the Court grants the motion and dismisses all of Defendants' Counterclaims.

### Facts

The following facts from Defendants' Counterclaims are taken as true for purposes of resolving this motion to dismiss. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Defendant Donlin Builders, Inc. ("Donlin") is an Illinois corporation with its principal place of business at 8224 Queen Victoria Lane, Tinley Park, Illinois 60477. Countercls. ¶ 1. Defendant MMB Development LLC ("MMB") is an Illinois limited liability corporation with its principal office at the same location. *Id.* ¶ 2. Defendants Walter M. Bekta and Maureen A. Burns Bekta (together, the "Betkas") are individuals who reside at that address as well. *Id.* ¶¶ 3-4. The Betkas are the sole members of MMB. *Id.* ¶ 5. FirstMerit is a national bank with a principal place of business at 106 S. Main Street, Akron, Ohio. *Id.* ¶ 6. Plaintiff asserts itself to be the alleged successor by assignment to the Federal Deposit Insurance Corporation as Receiver for Midwest Bank and Trust Company ("Midwest"). *Id.*

In 2005, allegedly with Midwest's encouragement, the Betkas organized MMB to focus on developing commercial and mixed-use projects. *Id.* ¶ 10. MMB soon began to develop a project called Springfort Hall in Tinley Park, Illinois (the "Springfort Hall Project"). *Id.* ¶ 11. Prior to commencing the Springfort Hall Project, John Cronin of Midwest represented to Defendants that, per Federal Deposit Insurance Corporation ("FDIC") rules, any promissory notes Midwest issued had to be one-year in length; however, Midwest was able to (and would in this case) automatically renew the notes annually as long as MMB and Donlin paid the accrued interest and turned over to Midwest eighty-five percent of the proceeds from the sales of Springfort Hall's residential units. *Id.* ¶ 13.

In reliance upon these representations, MMB and Donlin executed two separate notes: the Donlin Note, and the MMB Note (collectively, the "Notes"). *Id.* ¶ 14. The Notes matured on July 31, 2011, but were not paid in full upon maturity. *Id.* ¶¶ 15, 25. After the July 31, 2011 maturity date, Plaintiff continued to issue monthly statements demanding interest payments. *Id.* ¶ 16. These monthly statements sought payment of interest at the non-default variable interest

rate, not at the default interest rate provided under the Notes. *Id.* ¶ 17. In reliance on these monthly statements, Defendants made approximately $15,005.91 in interest payments to Plaintiff on the Donlin Notes and $109,710.03 on the MMB Note. *Id.* ¶ 18. Plaintiff accepted those payments. *Id.* ¶¶ 18–19. In addition, subsequent to the maturity date, Defendants made principal payments to Plaintiff on the MMB Notes in the amount of $426,232.73, which Plaintiff accepted. *Id.* ¶¶ 120–21. In April 20, 2012, Plaintiff's Loan Workout Officer, Kecia Sammons, offered to decrease the non-default interest rate applicable to the MMB Note and backdate the rate decrease to March 2012. *Id.* ¶¶ 23–24; Ex. 1, Countercls. The e-mail did not state that the Notes were in default. *Id.* ¶ 24.

Based on the foregoing, Defendants believed Plaintiff would not find them in default as long as they continued to make such payments. *Id.* ¶ 22. But, in November 2012, after accepting payments from Defendants at the Notes' variable non-default interest rate for sixteen months after the maturity date, Plaintiff issued a notice of default. *Id.* ¶ 25. Plaintiff thereafter imposed late payment penalties, retroactively increased the interest rate to the default rate of 11.75%, and backdated the effective date of the rate increase to August 1, 2011. *Id.* ¶¶ 28–29. Defendants claim that Plaintiff lacked authority to demand such payments under the Notes and failed to comply with the parties' agreement. *Id.* ¶¶ 26, 35.

### Legal Standard

Plaintiff moves to dismiss the Counterclaims pursuant to Rule 12(b)(6). To survive a motion to dismiss pursuant to Rule 12(b)(6), a claim must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. In reviewing a motion to dismiss, a court must accept as true all well-pleaded allegations, and must draw all possible

inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081. "A party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims." *Id.* at 1086 (citing *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006)). Additionally, if the plaintiff inserts "unnecessary facts" the defendant "may use those facts to demonstrate that she is not entitled to relief." *Id.* (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006); *Jackson v. Marion Cnty.*, 66 F.3d 151, 153–54 (7th Cir. 1995)).

## Analysis

Count I of Defendants' Counterclaims alleges that Plaintiff breached its agreement with Defendants regarding the Notes by, among other things, (i) imposing late payment penalties against Defendants due to their failure to make monthly interest payments subsequent to the Notes' maturity; (ii) issuing monthly statements demanding interest payments based upon a non-default interest rate, accepting those payments, and then retroactively increasing the interest rate to a default interest rate, thereby increasing the amount owed by Defendants under the Notes; and (iii) charging late fees based upon the principal outstanding balance at maturity. *Id.* ¶ 40. Defendants further assert that Plaintiff's breach has injured Defendants by limiting their ability to seek refinancing for amounts due under the Notes. *Id.* ¶¶ 41, 50, 64.

Count II of the Counterclaims contends that the Notes imposed an implied duty of good faith and fair dealing on Plaintiff, which was not expressly waived by the parties. *Id.* ¶ 43. According to Defendants, the Notes vested Plaintiff with discretion regarding: (i) whether to apply a default interest rate after a default under the Notes; and (ii) whether to apply penalties in the event that the borrower failed to make a timely payment under the Notes. *Id.* ¶ 44. Defendants assert that Plaintiff breached its duty of good faith and fair dealing by exercising its

discretion under the Notes in bad faith, unreasonably, and in a manner inconsistent with the reasonable expectations of the parties. *Id.* ¶ 45.

Count III of the Counterclaims alleges that Plaintiff's retroactive increase of the interest rate on Defendant's monthly statements from a non-default rate to a default rate and Plaintiff's issuance of late payment penalties on the payment of principal constitute false and deceptive trade practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* (the "ICFA"). *Id.* ¶ 63. Defendants further assert that such actions damaged them by limiting their ability to seek refinancing for amounts due under the Notes and damaging their credit ratings. *Id.* ¶ 64.

## I.  The Illinois Credit Agreements Act Bars Defendants' Claims (Counts I, II, III)

Plaintiff first argues that any claims raised by Defendants based on the alleged oral agreements are barred by the Illinois Credit Agreements Act, 815 Ill. Comp. Stat. 160 *et seq*. ("ICAA").

Section 2 of the ICAA provides that "a debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing . . . and is signed by the creditor and the debtor." 815 Ill. Comp. Stat. 160/2. Federal and state courts have construed this provision to bar "[a]ll actions which depend for their existence upon an oral credit agreement." *Whirlpool Fin. Corp. v. Sevaux*, 96 F.3d 216, 225 (7th Cir. 1996) (citing *Klem v. First Nat'l Bank of Chicago*, 655 N.E.2d 1211, 1213 (Ill. App. Ct. 1995)); *see also Help At Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 755 (7th Cir. 2001) (holding that agreements are invalid unless both parties' signatures appear on same agreement); *First Merit Bank v. Grasso*, No. 11 C 8986, 2012 WL 3308737, at *2 (N.D. Ill. Aug. 10, 2012) ("In addressing unsigned or oral credit agreements, federal and Illinois courts have uniformly interpreted the ICAA as a more

stringent version of the Statute of Frauds."); *Emp. Co., Ltd. v. Fifth Third Bank*, No. 11 C 4586, 2012 WL 686704, at *11 (N.D. Ill. Mar. 1, 2012) (stating that "the ICAA is to be construed broadly to prohibit all claims arising from alleged extra-contractual representations, omissions or conduct in a credit relationship") (quoting *VR Holdings, Inc. v. LaSalle Bus. Credit, Inc.*, No. 01 C 3012, 2002 WL 356515, at *3 (N.D. Ill. Mar. 6, 2002)). "[T]here is no limitation as to the type of actions by a debtor which are barred by the Act, so long as the action is in any way related to a credit agreement." *First Nat'l Bank in Staunton v. McBride Chevrolet, Inc.*, 642 N.E.2d 138, 141–42 (Ill. App. Ct. 1994). Under this interpretation, "all claims 'on or in any way related to' an oral credit agreement — whether sounding in contract or in tort — are barred by the Act." *Whirlpool Fin. Corp.*, 96 F.3d at 225.

> The Illinois Appellate Court has explained:
>
> We recognize such an interpretation causes a harsh result for bank customers in some circumstances. The Act is very broadly worded, however, and dictates such a result. Bank customers do make oral agreements with their banks. Most often these agreements are honored by the banks and no problem results. However, if a bank for some reason chooses not to honor the agreement, the customer *has no recourse in the law*. *There is no justifiable reliance on an oral credit agreement as a matter of law in Illinois.*

*First Nat'l Bank in Staunton*, 642 N.E.2d at 142 (emphasis added).

Here, Defendants assert three Counterclaims against Plaintiff: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing (under the title: Count II: Breach of Contract); and (3) violation of the Consumer Fraud Act. In essence, each of these Counterclaims are based upon Plaintiff's alleged oral statements to Defendants that it would automatically renew the Notes annually as long as Defendants paid monthly interest and a certain percentage of the proceeds from the sales of Springfort Hall's residential units. Countercls. ¶ 15. Each Counterclaim further arises from Defendants' allegation that in reliance on that purported oral

6

promise, they executed the Notes and continued to make payments after the Notes' maturity date. Each of Defendants' Counterclaims therefore "depend[s] for [its] existence" upon this verbal credit agreement. *Whirlpool Fin. Corp.*, 96 F.3d at 225; *First Nat'l Bank in Staunton*, 642 N.E.2d at 142. Thus, Defendants' claims are barred by the ICAA.

For their part, Defendants point to an email stating that one of Plaintiff's loan officers offered to extend the Notes in exchange for partial payment of the principal balance on one of the Notes. Ex. 1, Countercls. Illinois courts have held that e-mail exchanges "can potentially show that a credit agreement was formed," however, "they nevertheless must contain the relevant terms of the agreement." *Area Wide 79th & W., LLC v. Sulaiman*, No. 1-13-2324, 2014 WL 4929400, at *7 (Ill. App. Ct. 2014); s*ee also Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289 (7th Cir. 2002) (holding that sender's name on an e-mail satisfies signature requirement under Uniform Commercial Code).

*Van Pelt Constr. Co. v. BMO Harris Bank, N.A.*, 8 N.E.3d 554, 561-–65 (Ill. App. Ct. 2014), is illustrative. There, the attorneys for the two sides exchanged emails regarding a proposed settlement in connection with a credit agreement. But the e-mails failed to indicate the relevant terms of the agreement, the parties to be bound, and the deadlines by which the parties had to fulfill their obligations, among other things. As a result, the court concluded that the ICAA controlled. *Van Pelt Constr. Co.*, 8 N.E.3d at 564 (concluding that "any unwritten understanding by the parties has no bearing on whether [the ICAA] has been satisfied").

Similarly, in the present case, the email in question fails to establish the formation of a written credit agreement. Among other things, the email does not contain the relevant terms of

the agreement, indicate the parties to be bound, or specify the deadlines by which the parties had to fulfill their obligations. Consequently, the ICAA bars all of Defendants' claims.[1]

## Conclusion

For the reasons provided herein, the Court grants Plaintiff's motion to dismiss [126] all of Defendants' Counterclaims.

**SO ORDERED**                    **ENTER:** 3/11/15

_____
**JOHN Z. LEE**
**United States District Judge**

---

[1] Even if Counts II and III fell outside the scope of the ICAA, they are deficient for separate independent reasons. Count II fails because there is no independent cause of action for breach of the covenant of good faith under Illinois law. *See Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992) ("[T]he covenant of good faith and fair dealing has never been an independent source of duties for the parties to a contract."); *N. Trust Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995) ("Although the covenant of good faith and fair dealing is used as an aid in construing a contract, it does not form the basis of an independent tort recognized in Illinois."). Count III fails because Defendants must prove that Plaintiff "engaged in deceptive acts or practices *distinct from any underlying breach of contract*." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005) (emphasis added). "[A] deceptive act or practice involves more than the mere fact that a defendant promised something and then failed to do it." *Id.* Here, as currently pleaded, Defendants have failed to allege any distinct deceptive acts. Defendants' allegations under the ICFA mirror their breach of contract claim. Consequently, the allegations "are nothing more than restatements of the claimed breach of contract, albeit using the language of fraud." *Id.*