IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRSTMERIT BANK, N.A., successor by assignment to the Federal Deposit Insurance Corporation as Receiver for Midwest Bank and Trust Company, | ) ) ) ) ) | |
| Plaintiff, | ) ) | 13 C 2734 |
| v. | ) ) | Judge John Z. Lee |
| DONLIN BUILDERS, INC.; MMB DEVELOPMENT LLC; SPRING FORT HALL CONDOMINIUM; WALTER M. BEKTA; and MAUREEN A. BURNS BEKTA, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff FirstMerit Bank brought suit alleging breach of two promissory notes, breach of the guarantees on the notes, and seeking foreclosure on the properties securing the notes. FirstMerit now seeks summary judgment on its claims. For the reasons stated below, the Court grants in part and denies in part the motion as to liability and denies it as to damages.

## Factual Background

Prior to 2005, Walter and Maureen Bekta were in the business of constructing single family homes. *See* Defs.' LR 56.1 Stmt. Add'l ¶ 3, ECF No. 197. To do so, the Bektas had formed and were the sole shareholders of Donlin Builders, Inc. *See* Pl.'s LR 56.1 Stmt. ¶ 6, ECF No. 175.[1] In 2005, the Bektas decided to expand their business to mixed-use commercial and residential construction. *See* Defs.' LR 56.1 Stmt. Add'l ¶ 5. To launch this new venture, they

---

[1] FirstMerit filed a reply to Defendants' response to the Local Rule 56.1 statement of facts. *See* Pl.'s Reply LR 56.1 Stmt., ECF No. 210. Such a reply is not contemplated by Local Rule 56.1, and is stricken.

established and were the sole members of MMB Development LLC. *See* Pl.'s LR 56.1 Stmt. ¶ 8. The principal place of business for both corporations was the Bektas' residence in Tinley Park, Illinois. *See id.* ¶¶ 4–5, 7.

MMB's first mixed-use project was the Spring Fort Hall Condominium in Tinley Park, Illinois. *See* Defs.' LR 56.1 Stmt. Add'l ¶ 8. To finance the project, MMB and Donlin each took out a loan from Midwest Bank and Trust Company. (FirstMerit is the successor by assignment to the Federal Deposit Insurance Corporation as Receiver for Midwest. *See* Pl.'s LR 56.1 Stmt. ¶ 3.[2]) The MMB loan was secured by a mortgage on the Spring Fort Hall Condominiums and was guaranteed by Donlin, Walter Bekta, and Maureen Bekta. *See id.* ¶¶ 18, 21–23. The Donlin loan was secured by a mortgage on the Bektas' residence and was guaranteed by Walter and Maureen Bekta. *See id.* ¶ 39, 42–43.[3] The promissory notes for both loans list July 31, 2011, as the maturity date. *See id.* ¶ 24, 44.[4]

MMB and Donlin continued making payments past the maturity date and, according to Walter, were engaged in negotiations with employees from FirstMerit to extend the loans. *See id.* ¶¶ 25, 45; Defs.' LR 56.1 Stmt. Add'l ¶ 14. In reliance on what they believed to be an agreement to extend the maturity date, MMB and Donlin continued making their loan payments until November 2012. *See* Defs.' LR 56.1 Stmt. Add'l ¶ 20. At that point, FirstMerit sent MMB,

---

[2] Defendants dispute this statement of fact based on alleged problems with the underlying affidavit. *See* Defs.' Resp. LR 56.1 Stmt. ¶ 3, ECF No. 196. The parties have resolved that issue, and Defendants have not challenged this statement on any other basis.

[3] Although Donlin was the borrower of the loan, the Bektas, as individuals, were listed as the mortgagors. *See* Pl.'s LR 56.1 Stmt. ¶ 3.

[4] As will be discussed, Defendants dispute that the loans matured on July 31, 2011, and argue that the maturity date was extended by agreement. *See* Defs.' Resp. LR 56.1 Stmt. ¶¶ 24, 44. Defendants do not dispute that the notes themselves list July 31, 2011, as the maturity date.

Donlin, and the Bektas a letter requesting full payment on both loans. *See* Pl.'s LR 56.1 Stmt. ¶ 27.

Because one of the mortgaged properties was residential property, FirstMerit had to mail a grace period notice informing the residents that the underlying loan was past due. *See* 735 Ill. Comp. Stat. 5/15-1502.5. FirstMerit sent the notice to the Bektas' residence and addressed it to "Donlin Builders, Inc., c/o Mr. Walter M. Bekta." *See* Pl.'s LR 56.1 Stmt. ¶ 58.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts[,]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). The Court will, however, "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statements." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000).

## Analysis

In Counts I and II, FirstMerit alleges that MMB and Donlin breached the promissory notes. *See* 2d Am. Compl. ¶¶ 72–83, ECF No. 32. In Counts III and IV, the bank seeks to

foreclose on the Spring Fort Hall Condominiums and the Bekta residence. *See id.* ¶¶ 84–87. Counts V and VI are for breach of the guarantees. *See id.* ¶¶ 88–105.

Defendants do not dispute that the loans were not paid in full on July 31, 2011—the date listed on the promissory notes. *See* Defs.' Resp. LR 56.1 Stmt. ¶¶ 25, 45 (disputing only the fact that the date listed on the notes was the applicable maturity date). Instead, Defendants' response raises three arguments. First, Defendants contend that there were modifications to the promissory notes that extended the maturity date beyond July 31, 2011—an argument that relates to all counts. Next, they argue that summary judgment is inappropriate as to Count IV (foreclosure of the Bekta residence) because the grace period notice was deficient. Third, Defendants challenge FirstMerit's damages calculations, arguing that it has not provided sufficient foundation for the amounts it claims are due.

## I. Alterations to the Promissory Notes

Defendants argue that summary judgment is improper because disputed issues remain regarding whether the parties entered into agreements to alter the loans and extend the maturity date. Defendants allege that, during negotiations with FirstMerit's employees, the loans were extended beyond the July 31, 2011, date listed on the promissory notes. FirstMerit counters by noting that any modification to the loans needed to be fully set out in writing as required by the Illinois Credit Agreements Act ("ICAA"), 815 Ill. Comp. Stat. 160.

Section 2 of the ICAA provides that "a debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing . . . and is signed by the creditor and the debtor." 815 Ill. Comp. Stat. 160/2. The statute "requires that all claims and defenses concerning credit agreements be in writing." *GDI, LLC v. Cole Taylor Bank, N.A.*, 2015 IL App. (1st) 132310-U; *see also First Merit Bank v. Grasso*, No. 11 C 8986, 2012 WL 3308737, at *2 (N.D. Ill. Aug. 10, 2012) ("In addressing unsigned or oral credit agreements,

4

federal and Illinois courts have uniformly interpreted the ICAA as a more stringent version of the Statute of Frauds."); *Emp. Co., Ltd. v. Fifth Third Bank*, No. 11 C 4586, 2012 WL 686704, at *11 (N.D. Ill. Mar. 1, 2012) (stating that "the ICAA is to be construed broadly to prohibit all claims arising from alleged extra-contractual representations, omissions or conduct in a credit relationship") (quoting *VR Holdings, Inc. v. LaSalle Bus. Credit, Inc.*, No. 01 C 3012, 2002 WL 356515, at *3 (N.D. Ill. Mar. 6, 2002)).

The only evidence Defendants present of a written agreement to amend the notes is an email from Walter Bekta to a FirstMerit employee that states:

> As a follow up to our conversation earlier today, please make the 3 loan payments for MMB Development, Donlin Builders & the home equity line. If you have any further questions, do not hesitate to contact me. I look forward to working with you in the future.
> All the best,
> Wally Bekta

*See* Defs.' LR 56.1 Stmt. Add'l, Ex. 1 Wally Decl., Ex. A. Defendants cannot rely on this email for at least two reasons. First, nowhere does the message explain the terms of the alleged modification to the loans. There is a vague reference to payments to the loans, but the email does not specify the amounts of the payments or the new maturity date. At a minimum, the ICAA requires that any modification to a credit agreement be spelled out in writing. *Van Pelt Const. Co. v. BMO Harris Bank, N.A.*, 8 N.E.3d 554, 564 (Ill. App. Ct. 2014) (holding that a set of emails did not meet the requirements of the ICAA because they did not contain the relevant terms of the agreement). The email from Walter Bekta falls far short of that requirement.

Second, even if the email contained sufficient terms to evince a new or modified agreement, the ICAA bars the defense for another reason: it is unsigned. The ICAA requires that, in addition to containing the relevant terms, a credit agreement must be signed by the creditor and the debtor. *See* 815 Ill. Comp. Stat. 160/2; *see also Help At Home, Inc. v. Med. Capital, LLC*,

260 F.3d 748, 755 (7th Cir. 2001) (holding that agreements are invalid unless both parties' signatures appear on same agreement). Although a sender's name on an email can serve as a signature, *see Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 296 (7th Cir. 2002), the email at issue here is still missing a signature from the creditor. Without a signature from FirstMerit, the email cannot serve as a modification of the original loans.

Because Defendants have not presented any evidence of a written modification to the loans, there is no defense to the fact that they failed to pay the amount due by July 31, 2011. Thus, Defendants have failed to create a triable issue based on the notion that the notes were not breached, and summary judgment is granted as to liability in FirstMerit's favor with respect to Counts I, II, III, V, and VI.

## II.     Grace Period Notice

As for Count IV, Defendants additionally argue that summary judgment is inappropriate because there is a dispute of material fact as to the sufficiency of the notice. For mortgages secured by residential real estate, Illinois law requires that the party seeking to foreclose on the property send a notice to the mortgagor. *See* 735 Ill. Comp. Stat. 5/15-1502.5(c). The notice informs the mortgagor that the loan is past due and that he or she has thirty days to obtain housing counseling. *See id.* No legal action is permitted until thirty days after the notice is mailed. *See id.* Among other things, the statute requires that the notice "be addressed to the mortgagor at the common address of the residential real estate securing the mortgage." 735 Ill. Comp. Stat. 5/15-1502.5(c)

The undisputed record in this case shows that FirstMerit did not comply with the statute's requirements. *See* Pl.'s LR 56.1 Stmt. ¶ 58. FirstMerit sent the notice to the correct location, but addressed it to "Donlin Builders, Inc., c/o Mr. Walter M. Bekta." *See id.* But, here, the

mortgagors are Walter and Maureen Bekta, not Donlin Builders. Accordingly, FirstMerit failed to satisfy the notice requirements. *See* Defs.' Resp. Mot. SJ at 9–11, ECF No. 195.

That, however, is not the end of the inquiry. In cases such as this, where the bank has not complied with the statute's requirements, the mortgagor must still show that he or she was prejudiced as a result of the violation. *Aurora Loan Servs., LLC v. Pajor*, 973 N.E.2d 437, 444 (Ill. App. Ct. 2012) (holding that, when there is a technical violation of the notice requirements, the mortgagor must show resulting prejudice). Defendants state that they did not receive the notice and that, had they received the notice, they would have sought to obtain alternate financing. *See* Defs.' Resp. Mot. SJ at 10–11 (citing Defs.' LR 56.1 Stmt. Add'l ¶¶ 24, 25). At this stage, when all facts are construed in Defendant's favor, these assertions are sufficient to withstand FirstMerit's motion for summary judgment.

It is worth noting that the bank had the all the information necessary to send a notice that satisfied the necessary requirements. Because the statute does not require that the mortgagor actually receive the notice, had the bank addressed the notice correctly, the Bekta's would be without a defense. *See Bank of Am., N.A. v. Beeman*, 2014 IL App (2d) 140313-U, ¶ 26 ("Section 15-1502.5(c) requires only that the grace period notice be sent."). But FirstMerit failed to comply with the statute's requirements, and this, combined with the Bekta's statements, create a triable issue as to prejudice.

The Court thus denies FirstMerit's motion to summary judgment as to Count IV on this basis.

## III.    Damages

Finally, Defendants argue that material issues of disputed fact remain as to FirstMerit's alleged damages. FirstMerit submitted an affidavit by an employee laying out the damages, as of April 6, 2015, that it believes are due under the contract. For each loan, the affidavit breaks down

7

the damages into the principal due, interest, late fees, appraisal fees, receiver fees and costs, real estate taxes, and insurance. *See* Sammons Aff. ¶¶ 29, 48, ECF No. 203.

The problem with FirstMerit's evidence of damages is that the affidavit provides little to no explanation as to the underlying basis for the amounts claims. Take, for example, the receiver fees and costs, which the affidavit lists as $31,315.83. *See* Sammons Aff. ¶ 29. It is FirstMerit's burden to show how it calculated these receiver fees and costs, but provides no information in this regard. The affidavit merely lists each category of the damages due and leaves to the reader the task of reverse engineering the amounts based on the summary judgment record.[5] Because the affidavit lacks an explanation of how each category was calculated, the Court denies the motion for summary judgment as to damages.

There are, however, some legal questions that were raised in the briefing that can be addressed at this stage. To begin with, Defendants argue that the loans do not allow FirstMerit to charge interest beyond the maturity date. *See* Defs.' Resp. Mot. SJ at 13. This argument is directly contradicted by the text of the promissory notes, which state that in the event of default, "the interest rate on this Note shall be increased by adding a 6.000 percentage point margin." Pl.'s LR 56.1 Stmt., Ex. 1-5. Defendants attempt to create a dispute based on deposition testimony of FirstMerit's employee. But because the text of the promissory notes is unambiguous on this question, arguments based on the employees understanding of the notes are irrelevant. *See Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 993 (7th Cir. 2007) ("If the language

---

[5] The Court's own attempt at reconstructing the total for the receiver's fees and costs resulted in a number different from the figure that appears in the affidavit. This demonstrates the need for a more detailed explanation of FirstMerit's damages calculation.

of the contract is clear and unambiguous, we interpret the contract without the use of parol evidence.").[6]

Similarly, Defendants contend that FirstMerit may not recover appraisal fees. Defs.' Resp. Mot. SJ at 14. But the mortgage documents allow FirstMerit to recover all reasonable expenses incurred, including appraisal fees. *See* Pl.'s LR 56.1 Stmt., Ex. 1-7 at 10.

Defendants also argue that the late fees charged by FirstMerit are an unenforceable penalty. The provision at issue states that, "[i]f a payment is 10 days or more late, Borrower will be charged 7.000% of the regularly scheduled payment or $35.00, whichever is greater." Pl.'s LR 56.1 Stmt., Ex. 1-5. Because the rate is fixed regardless of how late the payment is, Defendants contend that the provision is invalid. *See Garcia v. Canan*, 581 F. Supp. 327, 328–29 (N.D. Ill. 1994) (holding that a note's ten percent fee for unpaid installments amounts to an unenforceable penalty). FirstMerit fails to make any arguments in response to Defendants' contention, despite addressing other issues raised by Defendants as to the late fees. The failure to respond to Defendants' argument results in waiver. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Accordingly, FirstMerit may not recover the portion of damages that is attributed to late fees.

Despite the rulings on these legal issues, disputed questions of fact still remain as to FirstMerit's purported damages. Accordingly, the motion for summary judgment is denied as to damages.

---

[6] Moreover, the testimony from the FirstMerit employee does not make the facially unambiguous language ambiguous. *Cf. Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 880 (7th Cir. 2005) (noting that the Illinois Supreme Court has not foreclosed the possibility that objective evidence can establish an extrinsic ambiguity). In the testimony, the bank employee could not find the provision that provides for interest payments past the maturity date. *See* Defs.' LR 56.1 Stmt. Add'l, Ex. 5 Sammons Dep. at 19:10–21, 21:19–24, 22:14–18. Just because the employee was not able to find the appropriate provision in the notes does not mean that the clear language is ambiguous.

**Conclusion**

For the reasons stated herein, the Court grants FirstMerit's motion for summary judgment [173] in part and denies it in part. Summary judgment is granted as to liability with respect to Counts I, II, III, V, and VI; it is denied as to Count IV. The motion for summary judgment also is denied as to the establishment of damages.


**IT IS SO ORDERED.**　　　　　　　　　ENTERED  3/30/16

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　**John Z. Lee**
　　　　　　　　　　　　　　　　　　　**United States District Judge**